Chambers Gasket & Manufacturing Company, Plaintiff-Appellant, *v.*
General Insurance Company of America, Defendant-Appellee.

(No. 60698;

First District (5th Division)—June 13, 1975.

Rabens, Formusa & Glassman, of Chicago (George C. Rabens, of counsel), for appellant.

Kralovec, Sweeney, Marquard & Doyle, of Chicago (John C. Doyle and Edward V. Scoby, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from a judgment entered in favor ·of defendant contending the trial court erred in finding that defendant was not obligated to: (1) pay, within the policy limits, any damages assessed against plaintiff in an action brought by Thrush Products, Inc., (2) defend the action brought by Thrush, and (3) reimburse plaintiff for expenses and attorney's fees incurred in defending the action brought by Thrush.

Plaintiff is in the business of manufacturing gaskets and sold some of its product to Thrush Products, Inc. (hereinafter referred to as Thrush). Thrush purchased the gaskets for installation in pressure reducing valves which it manufactured. The gaskets proved to be defective, and Thrush sued plaintiff in three counts, alleging in Count I the breach of an express warranty of failure to conform to samples and in Count II, breach of implied warranties of merchantability and fitness for purpose. Both

counts asked judgment for $15,813.61 which included $4,078.56 for the value of the gaskets and an additional sum of $11,737.05 for the cost of repairing the valves in which these gaskets had already been installed. In Count III, Thrush charged plaintiff with negligence in failing to inspect and test to discover the latent defects in the gaskets to the damage of Thrush in the sum of $15,813.61.

Plaintiff tendered the defense of the Thrush action to defendant under its blanket liability insurance, but defendant refused the tender on various grounds. Plaintiff then filed the instant action seeking a declaratory judgment that defendant must defend the Thrush action and pay any damages awarded Thrush within the policy limits. Defendant answered denying coverage because the claim did not show damage to property other than insured's as required by the policy and the policy excluded the cost of withdrawal or replacement of the named insured's products.[1]

The matter was tried on a stipulation of facts including, in addition to the pleadings, the insurance policy, the Thrush complaint, and various

[1] "EXCLUSIONS:
This insurance does not apply:
❋  ❋  ❋
(d) to property damage:
❋  ❋  ❋
    (6) to the named insured's products arising out of such products or any any part of such products;
    (7) to work performed by or on behalf of the named insured arising out of work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
    ❋  ❋  ❋
(e) ❋  ❋  ❋  or property damage resulting from the failure of the named insured's products ❋  ❋  ❋  to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to ❋  ❋  ❋  property damage resulting from the active malfunctioning of such products or work;
(f) to damages, because of property damage, due:
    (1) to the cost of repairing or replacing any defective goods or products manufactured, sold, handled or distributed by the named insured or defective work completed by or for the named insured;
    (2) to the loss of use of any such defective goods or products or completed work, or to damage resulting from the loss of use of such defective goods or products or completed work;
(g) to damage claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein
❋  ❋  ❋"

correspondence between the parties and from Thrush. The court entered judgment for defendant holding there was no obligation to defend, or to pay any judgment rendered in the Thrush action.

OPINION

Plaintiff contends that defendant was obligated to pay any judgment entered against plaintiff in the Thrush action. It argues that when the defective gaskets were installed in Thrush's valves, property damage resulted to the valve and that since the valve was property of a party other than the insured, Thrush's claim comes within the scope of the policy.

Thrush's claim is composed of two elements of damages: (1) the cost of the gaskets, and (2) the cost of replacing the defective gaskets already installed in the valves.

■■ In regard to the cost of the gaskets themselves, it is important to note that the policy is a liability policy, not one insuring the property or work of the insured. A liability policy is not intended to cover customer dissatisfaction or refunds made on the defective product itself. (*Goodyear Rubber & Supply Co. v. Great American Insurance Co.* (9th Cir. 1973), 471 F.2d 1343; *Hauenstein v. St. Paul-Mercury Indemnity Co.* (1954), 242 Minn. 354, 65 N.W.2d 122.) The claim for the value of the defective gaskets was clearly not within the scope of the policy coverage and refusal to pay this portion of the claim is justified.

The second element of Thrush's claim is the cost of replacing the defective gaskets already installed in the valves. Plaintiff principally relies on *Goodyear Rubber & Supply Co. v. Great American Insurance Co.* (9th Cir. 1973), 471 F.2d 1343, 1344, to support its theory of recovery. This was a declaratory judgment action seeking an interpretation of an insurance policy. Goodyear had fabricated and sold hatch gasket material to Northwest Marine which installed it on an ocean-going vessel. On the ship's next voyage the material was found to be defective and the vessel was returned to Portland where Northwest removed and replaced the gaskets. Northwest then sued Goodyear for the cost of replaced gasket material and also for the cost of removing the defective material and installing the new material. The exclusion in the insurance policy recited:

"Exclusions.

This policy does not apply * * *

(j) under coverage D, to injury to or destruction of * * * (4) any goods, products or containers thereof manufactured * * * by the named insured, * * *, out of which the accident arises * * *."

and the court went on to hold:

"Under well-settled principles, when one product is integrated into a larger entity and the product proves defective, the damage is considered as damage to the entity to the extent that the market value of the entity is reduced by an amount in excess of the value of the defective product.

Northwest's complaint alleges damage to the S.S. Arizona far in excess of the cost of new gaskets. The complaint thus alleged damage to property other than the product defectively manufactured by Goodyear and Great American should have accepted the tender of defense." (Footnotes omitted.)

We believe that Goodyear is distinguishable because of the more specific language of the exclusion clause in the present case. Plaintiff is seeking to recover the cost of replacing the defective gaskets already installed in the valves, and the policy exclusion specifically provides:

"Exclusions:

This insurance does not apply:

(f) to damages, because of property damage, due:

(1) *to the cost of* repairing or *replacing any defective goods* or products manufactured, *sold, handled or distributed by the named insured or defective work completed by* or for *the named insured * * *.*" (Emphasis supplied.)

Although plaintiff also cites *Thomas J. Lipton, Inc. v. Liberty Mutual Insurance Co.* (1974), 34 N.Y.2d 356, 357 N.Y.S.2d 705, 314 N.E.2d 37, and *Parker Products, Inc. v. Gulf Insurance Co.* (Tex. Civ. App. 1972), 486 S.W.2d 610, those cases are readily distinguishable from the case at bar. In *Lipton,* the insured sold contaminated noodles to Lipton which Lipton later used in its soup mixes. In *Parker,* the insured's candy mix contained paper making the ice cream into which it was incorporated unsaleable. In both cases the third parties' product was destroyed by the insured's defective goods. However, in the instant case, there was no destruction of or injury to Thrush's valves.

We therefore hold in view of the express language of the insurance policy exclusion that defendant is not obligated to pay any judgment covering the cost of replacing the defective gaskets already installed in the valves. *Hamilton Die Cast, Inc. v. United States Fidelity Guaranty Co.* (7th Cir. 1975), 508 F.2d 417.

■■ Plaintiff next contends that the trial court erred in finding that defendant was not obligated to defend the action brought by Thrush. Such an obligation arises only if the allegations in the pleadings fall within the scope of the policy. (*Maretti v. Midland National Insurance Co.,* 42 Ill.App.2d 17, 190 N.E.2d 597.) The pleading to be examined here is Thrush's complaint. As we have already noted, Thrush's com-

plaint, grounded primarily in contract, alleged two elements of damages: the cost of the gaskets and the cost of replacing the gaskets which had already been installed. Since we have determined that these damages are not covered by the policy, defendant had no obligation to defend the action and correctly refused to do so.

Plaintiff lastly contends that defendant was obligated to reimburse plaintiff for its expenses and attorney's fees incurred in defending the Thrush action. Since defendant's refusal to defend was proper, it follows that defendant is not liable to reimburse plaintiff for the expense of defense.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

DRUCKER and SULLIVAN, JJ., concur.